RAIM, by Guardian *ad litem,* and another, Appellants, v. VENTURA, Respondent.

*February 6—March 6, 1962.*

68

For the appellants there were briefs by *Mittelstaed, Heide, Sheldon & Hartley* of Kenosha, and oral argument by *William A. Sheldon*.

For the respondent there was a brief by *Moore & Moore* of Milwaukee, and oral argument by *Raymond J. Moore*.

GORDON, J.   There is ample evidence to support the jury's finding that the glass door in question was adequately marked.  Thus there is no question of illusion or camouflage which might have misled the plaintiff.  This distinguishes the case at bar from such cases as *McCain v. Bankers Life & Casualty Co.* (Fla. 1959), 110 So. (2d) 718, 68 A. L. R. (2d) 1194, and *Grabel v. Handro Co.* (City Ct. 1955), 161 N. Y. Supp. (2d) 998.  See Anno. 68 A. L. R. (2d) 1204. The other basis for claimed liability on the part of the respondent Ventura is his alleged violation of his duty with respect to the type of glass used in the door under sec. 101.06, Stats.

Whether a structure falls short of the standard required under the safe-place statute is ordinarily a factual question to be resolved by the jury. The trial judge, however, concluded that Ventura's motion for a directed verdict should have been granted because, as a matter of law, he did not violate the safe-place statute with reference to the type of glass used in the door. The issue in this case is the correctness of that ruling.

Ventura's duty was to make his premises, including this door, as safe, or free from danger, as their nature would reasonably permit. Secs. 101.06 and 101.01 (11), Stats. There is no evidence that Ventura had reason to anticipate that the door would be subjected to an extraordinary force such as that applied by the plaintiff Barbara Raim. Had the glass broken under more-normal use thereof, such as by a slamming or by a person's being pushed or crowded into the door, a jury issue would have been presented. See *Watts v. Bacon & Van Buskirk Glass Co.* (1958), 20 Ill. App. (2d) 164, 155 N. E. (2d) 333, affirmed, 18 Ill. (2d) 226, 163 N. E. (2d) 425; *Small v. 870–7th Ave. Corp.* (1948), 273 App. Div. 216, 76 N. Y. Supp. (2d) 384; see also Appleman, Plate Glass Door Cases, 1959 Trial and Tort Trends, p. 32. The plaintiff's ramming the door with her head upon a fast walk or run for a distance of 12 feet does not fairly present a jury issue as to whether this door was as safe as it reasonably might have been under our safe-place statute.

The duty to keep premises safe under sec. 101.06, Stats., does not make an owner an insurer; it "does not *guarantee* safety." *Hipke v. Industrial Comm.* (1952), 261 Wis. 226, 233, 52 N. W. (2d) 401; *Neitzke v. Kraft-Phenix Dairies, Inc.* (1934), 214 Wis. 441, 446, 253 N. W. 579. In the latter case, this court said:

". . . when the owner has done everything necessary to render his premises reasonably safe and to provide against injury resulting from acts which he could reasonably fore-

see, his duty to employees and to frequenters is fulfilled. . . . A reasonable interpretation of the statute as it applies to frequenters is that the employer's duty is to make the premises safe for the performance of acts which he knows or reasonably should know are going to be performed thereon."

Ventura changed the type of glass in the door subsequent to the injury, but such fact is not controlling as to the existence of a previous violation of a safe-place standard. *Heiden v. Milwaukee* (1937), 226 Wis. 92, 275 N. W. 922.

While the practice in the community or the custom in the trade is not conclusive as to what meets the required standard for reasonable safety, it may be admissible as evidence in connection therewith depending upon the circumstances of the case. In *Johannsen v. Peter P. Woboril, Inc.* (1952), 260 Wis. 341, 345, 51 N. W. (2d) 53, we held that the trial court properly excluded the defendant's proffered evidence to show how other contractors performed. However, that case was an action for injuries sustained when a painting contractor, using inflammable cleaning fluid, set up his painting facilities adjacent to some welding machines. The court observed that under these circumstances the practice of other contractors was immaterial:

"What could and should have been done was too clear to be affected by what other contractors might choose to do."

A usage which is patently unsafe (as in the *Johannsen Case*) or a custom which is contrary to law cannot be given credence by the court. *Molaske v. Ohio Coal Co.* (1893), 86 Wis. 220, 56 N. W. 475; *Minaghan v. State* (1890), 77 Wis. 643, 46 N. W. 894.

However, where there is an avalanche of acceptability of a custom or usage, and where such general practice contravenes no established law, public policy, or common sense, it may be persuasive as to what is a rule of reason in a safe-

place case. The significance of custom and usage in a case involving common-law negligence was described as follows:

"The proper standard of defendant's duty was the care which the great mass of mankind ordinarily exercise under the same or similar circumstances. Now and then it appears that the customary way of doing things is utterly disregardful of personal safety, where it is said, the mere fact that the way adopted was the customary way, is not a defense against the claim of liability. They are very extreme cases, quite different from one where men of judgment and experience commonly for a long time have been accustomed to arrange premises and instrumentalities for an ordinary business enterprise like a railroad, in a particular way, found by experience to be reasonably safe and convenient." *Jensen v. Wisconsin Central R. Co.* (1911), 145 Wis. 326, 335, 128 N. W. 982.

In the case at bar there was evidence that more than 2,000 doors like the respondent's have been installed in the Kenosha area during the past eight years; 98 percent of all of the glass doors in such area are like the one in question in that they employ quarter-inch plate glass. In our opinion, the existence of such one-sided usage was properly considered by the trial judge in determining whether the safe-place standards were violated by Ventura. Custom and usage will not insulate an owner from liability for maintaining an unsafe condition, but on the facts of this case they are cogent evidence of a standard that is both reasonable and safe.

In *Werlein v. Milwaukee E. R. & T. Co.* (1954), 267 Wis. 392, 66 N. W. (2d) 185, 46 A. L. R. (2d) 1091, it was determined that as a matter of law a common carrier which is held to the "highest degree of care" was not guilty of common-law negligence when its passenger was injured by shattered glass occasioned by a snowball thrown against the trolleybus window. Notwithstanding the high degree of care required, it was noted by Mr. Justice CURRIE, speaking

for the court, that safety glass was not customarily employed by other prudent carriers similarly situated.

Since we find that a directed verdict was properly granted in favor of the respondent Ventura, we do not reach the question of the manner in which the comparison of negligence was submitted to the jury.

*By the Court.*—Judgment affirmed.