ANDERSON and another, by Guardian *ad litem,* Appellants, v. JOINT SCHOOL DISTRICT No. 3, VILLAGE OF LUCK, etc., Respondent: WOLD and others, Impleaded Defendants.*

*April 30—July 20, 1964.*

---

* Motion for rehearing denied, without costs, on September 11, 1964, HEFFERNAN, J., not participating.

582

For the appellants there were briefs and oral argument by *D. E. Jensen* of Luck.

For the respondent there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar, Jr.*

WILKIE, J. The sole issue raised on this appeal is whether the trial judge was correct in ruling that, as a matter of law, the defendant school district did not violate the safe-place statute with reference to the glass view panels in the swinging door.

The jury found that the school district failed to meet the standard of care imposed on it by the safe-place statute to make the school premises, including this door, as safe, or free from danger, as their nature would reasonably permit.[1] In directing a verdict for the defendant school district, notwithstanding the jury's conclusion, the trial court determined that there was no credible evidence to support the jury finding.

The general rule regarding directed verdicts was stated by this court in *Smith v. Pabst*[2] as follows, at page 491:

" 'A verdict may properly be directed only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion.' " Citing *Rusch v. Sentinel-News Co.* (1933), 212 Wis. 530, 533, 250 N. W. 405.

More recently, we held in *Schumacher v. Klabunde*[3] as follows, at page 87:

" 'In determining whether or not the trial court was in error in directing the verdict this court must take that view

---

[1] Secs. 101.06 and 101.01 (11), Stats.

[2] (1940), 233 Wis. 489, 288 N. W. 780. See also *Thoni v. Bancroft Dairy Co.* (1949), 255 Wis. 577, 39 N. W. (2d) 690.

[3] (1963), 19 Wis. (2d) 83, 119 N. W. (2d) 457. See also *Radloff v. National Food Stores, Inc.* (1963), 20 Wis. (2d) 224, 121 N. W. (2d) 865, 123 N. W. (2d) 570.

of the evidence which is most favorable to the party against whom the verdict is directed.' *Mueller v. O'Leary* (1935), 216 Wis. 585, 587, 257 N. W. 161."

Applying these rules to the instant case, we are satisfied that there was credible evidence to support the jury's determination of a violation of the safe-place statute by the school district. From the testimony of the man who installed the glass view panels, the jury could have concluded that the glass was ordinary window glass of the thickness of .118 inches. It was undisputed that Carol placed her right hand on the view panel, that she pushed to open the door exerting no extraordinary force, and that the glass broke, cutting her arm. Under the circumstances, a jury could infer that the glass was not thick enough or strong enough and that, accordingly, the school district has not provided a door that was as safe or free from danger as the nature of the premises, including the door, would reasonably permit.

Both parties rely on the recent case of *Raim v. Ventura.*[4] In that case, the plaintiff, a ten-year-old girl, during a rainstorm, either ran or walked rapidly toward a glass entrance door of a cheese market. Head down, she struck the glass door, which was a single panel of quarter-inch plate glass, bordered with aluminum strips and a metal "pull" bar. We affirmed a directed verdict on behalf of the defendant market owner, stating, at page 71: "Had the glass broken under more-normal use thereof, such as by a slamming or by a person's being pushed or crowded into the door, a jury issue would have been presented."

In the case at bar the use being made of the view panel when Carol pushed on it to open the door, was, in our view, a normal use that reasonably could have been anticipated by the school district. This fact is sufficient to distinguish the

---

[4] (1962), 16 Wis. (2d) 67, 113 N. W. (2d) 827.

present case from *Raim,* and to raise a jury question on whether the school district violated the safe-place statute.

In *Raim* we stated, at page 71 :

"Whether a structure falls short of the standard required under the safe-place statute is ordinarily a factual question to be resolved by the jury."

Since such a factual question was presented here, and there was evidence to support the jury's finding, the trial judge's ruling that the school district did not violate the safe-place statute was erroneous and the verdict should be reinstated.[5]

*By the Court.*—Judgment reversed, and cause remanded for entry of judgment in favor of plaintiffs.

BEILFUSS, J. (*dissenting*). I respectfully dissent. The majority concludes the evidence is sufficient to raise a jury issue as to whether or not the door was as safe as the nature of the premises would reasonably permit. The trial court concluded that the plaintiff had not met her burden of proof in that the evidence was insufficient to establish a violation of the safe-place statute. I agree with the trial court.

Two significant quotations from recent decisions on the burden of proof and the scope of the safe-place statute follow :

"The plaintiff stresses the words 'absolute duty' on the part of the employer which have been frequently used in our decisions. From this language he contends that the employer is an insurer and that negligence is not an issue

[5] Neither of the parties has raised the issue as to whether or not the plaintiff was a pupil at the time of the accident and as to whether or not she was an employee or frequenter. See our recent ruling in *Niedfelt v. Joint School Dist.* (1964), 23 Wis. (2d) 641, 127 N. W. (2d) 800. For the reason that this issue has not been raised or presented we do not consider it herein.

in a safe-place case. The safe-place statutes do not make an employer the insurer of the safety of a frequenter. *Boutin v. Cardinal Theatre Co.* 267 Wis. 199, 64 N. W. (2d) 848. The burden of proving all of the elements of liability under the safe-place statutes is upon the plaintiff in an action seeking recovery of damages for personal injuries. It has long been held that the safe-place statutes lay down a standard of care and if those to whom it applies violate the provisions thereof they are guilty of negligence. *Holzworth v. State,* 238 Wis. 63, 298 N. W. 163; *Morrison v. Steinfort,* 254 Wis. 89, 35 N. W. (2d) 335; *Stellmacher v. Wisco Hardware Co.* 259 Wis. 310, 48 N. W. (2d) 492. As in other negligence cases, contributory negligence is a defense." *Paluch v. Baldwin Plywood & Veneer Co.* (1957), 1 Wis. (2d) 427, 432, 433, 85 N. W. (2d) 373.

"The safe-place statute, sec. 101.06, does not make an employer the insurer of the safety of a frequenter. *Boutin v. Cardinal Theatre Co.* (1954), 267 Wis. 199, 64 N. W. (2d) 848. The mere fact that an accident happens does not prove that the place was unsafe. *Heckel v. Standard Gateway Theater* (1938), 229 Wis. 80, 281 N. W. 640. The burden of proving all the elements of liability under the safe-place statute is upon the plaintiff in an action seeking recovery of damages for personal injuries. *Paluch v. Baldwin Plywood & Veneer Co.* (1957), 1 Wis. (2d) 427, 85 N. W. (2d) 373. To create liability under the statute the injured party must show that a defect or hazardous condition existed, that such condition caused the injury, and that it had existed for a sufficient length of time to afford the owner or employer opportunity to discover and remedy the situation. *Boutin v. Cardinal Theatre Co., supra.*" *Rosenthal v. Farmers Store Co.* (1960), 10 Wis. (2d) 224, 227, 102 N. W. (2d) 222.

The door was constructed of wood with a glass view panel. The obvious purpose of a view panel in a door that swings both ways is to afford to the users a means of determining whether the door can be pushed open without

striking a person or object on the other side. The view panel was designed to enhance the safety of its use. It was not intended to be used as a means of opening the door. A metal push plate was attached to the door for that specific purpose. To effectively serve its purpose the view panel must necessarily be in close proximity to the push plate. I cannot agree that the school district should be required to reasonably anticipate the view panel would be used to open the door.

Further, I cannot agree that the mere proof that glass in the view panel was .118 inches thick is sufficient to allow an inference that it was not as safe as the nature of premises would reasonably permit. There is no proof as to the force necessary to break a panel of this size and thickness. In my opinion, an inference that it was unsafe must rest upon conjecture. I would affirm the order and judgment of the trial court.

I am authorized to state Mr. Chief Justice CURRIE and Mr. Justice HALLOWS join in this dissent.

The following memorandum was filed September 11, 1964:

PER CURIAM (*on motion for rehearing*). Respondent district challenges our statement that the testimony of the man who installed the glass panels (a Mr. Curnow) would support a finding that the glass was ordinary window glass of the thickness of .118 inches. Upon review of the record, it appears that although Mr. Curnow had made statements before trial referring to the glass as double-strength window glass .118 inches thick, his testimony was that he did not know exactly how thick it was but that he was fairly sure it was not one-quarter inch thick. We correct our statement accordingly.

The lack of evidence of the exact thickness, however, is not fatal to the plaintiff's case, in view of the inference of insufficiency of the glass which could be drawn from the fact that it broke when subjected to a use which could be deemed a normal use, without extraordinary force.[1]

Motion for rehearing denied, without costs.

---

[1] *Raim v. Ventura* (1962), 16 Wis. (2d) 67, 113 N. W. (2d) 827.