ZILLMER, by Guardian *ad litem*, Plaintiff and Respondent, v. MIGLAUTSCH and another, Defendants and Appellants: KROHN and another, Defendants and Respondents.

*June 7—June 30, 1967.*

693

694

696

For the defendants-appellants there was a brief by *Hoffman, Cannon, McLaughlin & Herbon,* attorneys, and *L. William Staudenmaier* of counsel, all of Milwaukee, and oral argument by *Mr. Staudenmaier.*

For the plaintiff-respondent there was a brief by *Johnson & Brendemuehl* of Oconomowoc, and oral argument by *Curtis A. Brendemuehl.*

For the defendants-respondents there was a brief and oral argument by *Clayton A. Cramer* of Waukesha.

HEFFERNAN, J.

*The retroactivity of the Baierl v. Hinshaw rejection of the fault verdict.*

If the rejection of the fault verdict in *Baierl v. Hinshaw* (1966), 32 Wis. (2d) 593, 146 N. W. (2d) 433, is prospective only, the trial court herein erred in setting aside the verdict and the questions raised by the appellant in opposition to a new trial need not be decided. We conclude, however, that the position stated by this court in *Baierl* was merely a statement of the requirements, in the absence of the parties' stipulation, of sec. 270.27, Stats., that have been controlling at least since the amendment to that statute in 1961. We conclude that the trial judge was correct in applying the *Baierl v. Hinshaw* rule to this case.

*Did the court err in permitting the question of Clara Miglautsch's negligence to go to the jury?*

A case should be taken from the jury and a verdict directed against a party:

" '. . . only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion.' " *Anderson v. Joint School Dist.* (1964), 24 Wis. (2d) 580, 583, 129 N. W. (2d) 545, 130 N. W. (2d) 105, citing *Smith v. Pabst* (1940), 233 Wis. 489, 288 N. W. 780, and *Rusch Sentinel-News Co.* (1933), 212 Wis. 530, 533, 250 N. W. 405.

Also:

"A verdict ought to be directed if, taking into consideration all the facts and circumstances as they appear in

evidence, there is but one inference or conclusion that can be reached by a reasonable man." *Milwaukee v. Bichel,* ante, p. 66, 150 N. W. (2d) 419.

In determining whether or not the trial court was in error in failing to direct the verdict, this court must take that view of the evidence which is most favorable to the party (the plaintiff in this case) against whom the verdict was sought to be directed. *Schumacher v. Klabunde* (1963), 19 Wis. (2d) 83, 87, 119 N. W. (2d) 457; *Mueller v. O'Leary* (1935), 216 Wis. 585, 587, 257 N. W. 161. If there is any evidence to sustain a defense or a cause of action, the case must be submitted to the jury. *Kielich v. Whittaker* (1924), 183 Wis. 470, 198 N. W. 270. The weight and sufficiency of the evidence is for the jury (*Jolitz v. Fintch* (1938), 229 Wis. 256, 261, 282 N. W. 87), as is the weight to be given to the witness' positive or negative testimony. *Conrardy v. Sheboygan County* (1956), 273 Wis. 78, 82, 76 N. W. (2d) 560. Furthermore, it is basic that the credibility of the evidence and the inferences to be drawn therefrom are matters for the jury. *Braatz v. Continental Casualty Co.* (1956), 272 Wis. 479, 487, 76 N. W. (2d) 303. If there is any evidence other than mere conjecture or incredible evidence to support a contrary verdict, the case must go to the jury. *Larson v. Splett* (1954), 267 Wis. 473, 66 N. W. (2d) 181. Incredible evidence is evidence in conflict with the uniform course of nature or with fully established or conceded facts. *Davis v. Skille* (1961), 12 Wis. (2d) 482, 107 N. W. (2d) 458; *Czerniakowski v. National Ice & Coal Co.* (1948), 252 Wis. 112, 31 N. W. (2d) 156.

The stringency of these tests is such that this court has cautioned trial courts against granting motions for directed verdicts in close cases and recommends as the better practice the reservation of a ruling on the motion until after the jury has returned its verdict. *Davis v. Skille, supra,* page 490; *Rasmussen v. Garthus* (1961), 12

Wis. (2d) 203, 209, 107 N. W. (2d) 264; *Koczka v. Hardware Dealers Mut. Fire Ins. Co.* (1966), 29 Wis. (2d) 395, 399, 138 N. W. (2d) 737.

Nevertheless, the plaintiff in a tort case does have the burden of proof and, in meeting this burden, he must come forward with evidentiary facts that establish the ultimate facts; and the degree of proof must be such as to remove these ultimate facts from the field of mere speculation and conjecture. *Reichert v. Rex Accessories Co.* (1938), 228 Wis. 425, 439, 279 N. W. 645; *Creamery Package Mfg. Co. v. Industrial Comm.* (1933), 211 Wis. 326, 330, 248 N. W. 140. A jury cannot be allowed to merely theorize negligence from what might be a mere possibility. *Hyer v. Janesville* (1898), 101 Wis. 371, 377, 77 N. W. 729.

The appellant Miglautsch argues two principal points for her position that her motion for a directed verdict or the later motion for judgment on the verdict should have been granted. She takes the position that there was no credible evidence of record that would have supported a finding of causal negligence and, in addition, Miglautsch was confronted with an emergency not of her own making and, therefore, should be exonerated as a matter of law for any conduct thereupon that was less than the optimum under the circumstances.

However, reviewing the evidence in light of the strict standards set forth above, although conceding that a proper jury verdict finding the appellant free of negligence would be supportable, we cannot conclude that as a matter of law the appellant was free of negligence.

The testimony is clear that the appellant first saw the plaintiff on his bicycle a considerable distance ahead. Although the appellant disclaimed any intention of passing, it is an established fact that she was overtaking him. Just prior to the accident, the boy on the bike was two feet ahead of the Miglautsch vehicle and approximately two-three feet to the right. The appellant saw the door

of the parked automobile open and a knee start to appear; and simultaneously the bike swerved to the left into Miglautsch's path. She said that only "a few seconds" elapsed between the turn and the crash. She testified that she was too "stunned" to apply her brakes immediately.

Under this state of facts, we conclude that a jury issue in regard to her negligence was presented. The question presented is one of management and control in the manner in which she approached the bicycle from the rear and was about to pass him, for despite her statement that she did not intend to pass, there was evidence that she was going faster than the bicycle. The distance between the car and the bicycle had closed rapidly.

The statutes contained in ch. 346, Stats., Rules of the Road, are relevant to this determination. Sec. 346.02 (4)[1] makes the Rules of the Road generally applicable to bicycles. Sec. 346.07 (2) provides:

"The following rules govern the overtaking and passing of vehicles proceeding in the same direction . . . .

"The operator of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle."

Thus, it would appear that a jury question was presented of whether Miglautsch was in the act of passing the bicycle and whether the lateral distance that she allowed was safe.

The trial judge also pointed out that if she were not in the act of passing, the question of whether she was fol-

[1] Sec. 346.02 (4) provides:

"Subject to the special provisions applicable to bicycles, every person riding a bicycle upon a roadway is granted all the rights and is subject to all the duties which ch. 346 grants or applies to the operator of a vehicle, except those provisions which by their express terms apply only to motor vehicles or which by their very nature would have no application to bicycles."

lowing too closely was then presented. Sec. 346.14 (1), Stats., provides:

"The operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."

While it appears to be more likely from the testimony that the Miglautsch car was about to pass, rather than just follow, the bicycle, nevertheless, there was testimony from which a jury could have concluded that Miglautsch was following at an unreasonably close distance.

We conclude that there was a jury question in regard to Miglautsch's management and control of her automobile in passing or following the bicycle.

Since a jury question is presented as to whether Miglautsch was negligent in the events that led up to the collision, we cannot say as a matter of law that she should be exonerated from all liability by reason of an unexpected emergency.

This court has said:

"There are three basic requirements which must be met before the emergency doctrine can be applied. First, the party seeking the benefits of the emergency doctrine must be free from negligence which contributed to the creation of the emergency. Second, the time element in which action is required must be short enough to preclude deliberate and intelligent choice of action. Third, the element of negligence being inquired into must concern management and control before the emergency doctrine can apply. Unless a favorable finding on each of these elements is made, the emergency doctrine cannot be applied to a course of conduct which led to an automobile accident." *Geis v. Hirth* (1966), 32 Wis. (2d) 580, 586, 146 N. W. (2d) 459.

There are at least two occasions when a court should properly submit the emergency question to a jury rather than ruling on it as a matter of law. There should be a jury submission if there is a question of whether the

negligence of the party seeking the benefit of the emergency rule contributed to the emergency. We said in *Shaw v. Wuttke* (1965), 28 Wis. (2d) 448, 453, 137 N. W. (2d) 649:

"If there is a factual dispute as to such negligence and assuming the time element is so short as to make the doctrine otherwise applicable, a person is entitled to the emergency-doctrine instruction and it is for the jury to determine its application. *Misiewicz v. Waters* (1964), 23 Wis. (2d) 512, 127 N. W. (2d) 776."

The second condition under which a jury determination is required as to whether an emergency exists arises when it appears that the person asking for the instruction is free of negligence, but "the time element may not be so short as to constitute an emergency as a matter of law." *Geis v. Hirth, supra,* page 587.

If both elements concur, *i.e.,* that as a matter of law the person seeking the instruction is free of negligence and "the time interval is so short that the reaction is practically instinctive or intuitive" (*Geis v. Hirth, supra,* p. 587), the emergency doctrine will be applied as a matter of law; but if one or both the elements is absent, the question of emergency even when viewed most favorably from the viewpoint of the person who seeks it, becomes a matter to be decided by the jury.

Moreover, even though an emergency situation is determined by the jury to exist, the appellant is not thereby absolved from all possibility of further negligence.

In *Schmit v. Sekach* (1966), 29 Wis. (2d) 281, 289, 139 N. W. (2d) 88, we stated:

"The emergency instruction relates to the course taken by a driver who is suddenly confronted by an emergency which was not contributed to by his own negligence. As usually given, the instruction states that one who is thus compelled to act instantly is not guilty of negligence if he makes a 'choice of action or inaction as an ordinarily prudent person might make, if placed in the same position, even though it should afterwards appear not to

have been the best or safest course.' See Wis J I—Civil, Part I, 1015.

"The instruction is designed to relieve a driver who is confronted with an emergency from being labeled negligent in connection with his manner of driving, *i.e.*, his management and control. The instruction relates to his 'action or inaction' and his 'best or safest course.'"

In the instant case, though the jury were to find that the emergency that confronted Miglautsch exonerated her from a failure to act to avoid the accident, yet it could find that she was thereafter negligent in failing to act as a reasonable or prudent person would under the circumstances when she failed to finally halt her car for a distance of almost 60 feet and at one point appeared to halt and then to start up again. The test of negligence in the face of an emergency is identical to that used in a nonemergency situation, *i.e.*, was the action or inaction conformable with that expected of the reasonable or prudent man placed in like circumstances. In the emergency situation, the conduct can be "mistaken and yet prudent." Holmes, C. J., *Kane v. Worchester C. St. R. Co.* (1902), 182 Mass. 201, 65 N. E. 54, cited in Prosser, Law of Torts (hornbook series, 3d ed.), p. 172, sec. 33, fn. 84. Nevertheless, the prudent-reasonable-man test is applicable at all times prior to the emergency, during it, and after it. We therefore conclude that the trial judge properly found that the appellant was not so clearly free of negligence as to direct a verdict in favor of her.

It thus appears that a jury question was presented as to whether Miglautsch's possible negligence in following too closely or failing to allow enough lateral distance between her and the bicyclist contributed to the emergency that ensued, and even in the face of the finding by the jury that the emergency that led to the original impact was not contributed to by the defendant, the question remains of whether Miglautsch's failure to stop in a shorter distance, considering that her car was dragging the bicyclist and the dragging contributed to the severity

of the injuries, was in itself a separate item of negligence. We conclude that the trial court properly overruled the appellant's motion for a directed verdict. The appellant's negligence was properly a matter for jury consideration.

*Does failure of plaintiff to object to the "fault" verdict prevent trial court from granting motion of defendant-respondent for new trial?*

In *Baierl v. Hinshaw, supra,* page 597, this court stated:

"This court has repeatedly held that failure of counsel to object to the form of a proposed special verdict before it is submitted to the jury constitutes a waiver of any right thereafter to object to the verdict as submitted. Therefore, the failure of plaintiff's counsel to timely object to the form of the instant verdict precludes plaintiff from raising the issue of the form of the verdict as a matter of right on this appeal."

Appellant takes the position that, since the plaintiff did not object to the form of verdict, he should not be allowed the benefit of a new trial which gives him another chance to hold the appellant liable. However, it should be noted that the other defendant, Krohn, who is a respondent herein, did object and there is no reason why she should be barred from a further opportunity to seek contribution from the appellant. It should be noted that the plaintiff does not seek a new trial. He is content, as well he might be, that the first trial found one of the defendants 100 percent negligent. Why the fact that his failure to object to the verdict that might bar him from asking for a new trial, that he does not seek, should bar Krohn from a new trial is not clear. Whatever the status of the plaintiff might be in seeking a new trial we do not consider herein, because he does not seek one. What is clear is that other interests than those of the plaintiff are involved. The defendant-respondent

(Krohn), who objected to the verdict and who moved for a new trial, has a possible contribution interest in having the appellant held jointly liable for the plaintiff's damages. In our ruling on *Baierl v. Hinshaw*, we concluded that the fault verdict hindered the proper exploration of the possible elements of negligence. In view of that holding we must conclude, as did the trial judge, that it is in the interest of justice for the defendant-respondent to have a new trial which culminates in an approved verdict. To accomplish that end, all parties to the lawsuit must participate in the new trial.

*Should jury have been instructed that bicyclist was negligent as a matter of law for failing to have an audible warning signal as required by sec. 346.81(2), Stats.?*

The defendant-respondent filed no cross appeal but in her brief contended that the court erred in failing to instruct that the plaintiff's failure to have a warning signal was negligence as a matter of law and should have left to the jury only the question of whether that negligence was causal.

Sec. 346.81 (2), Stats., provides:

"No person shall operate a bicycle upon a highway unless it is equipped . . . with a bell or other device capable of giving a signal audible for a distance of at least 100 feet, but a bicycle shall not be equipped with nor shall any person use upon a bicycle any siren or whistle."

Admittedly, the bicycle was not equipped with a bell or other warning device. While it may be negligence as a matter of law not to have such equipment, we conclude that such negligence was completely irrelevant to the issue presented to the jury and was correctly ignored by the trial judge in his instructions. Under the facts of this case, where there was concededly no opportunity for signalling or sounding a bell, the absence of such a device was a factor that was completely extraneous, inapplicable,

and immaterial to the true issues of the case. We see no reason to inject into the case an element of negligence that was clearly not causal. It is apparent that were the jury to find that failure to have a bell were causal in this accident, the conclusion would be contrary to the evidence and clear error. It would have been folly for the trial judge to inject this completely irrelevant item of negligence into the issues of the case.

In the case of *Siegl v. Watson* (1923), 181 Wis. 619, 195 N. W. 867, it was claimed that it was error to introduce into evidence a city ordinance that required lights upon bicycles. For various reasons, including the fact that the jury found the bicyclist, who did not have lights, free of all negligence, the court held that the use of the ordinance was nonprejudicial. It did, however, state that, in view of the admitted factors that caused the accident and the fact that the defendant plainly saw the cyclist despite his not having lights:

"The admission of the ordinance was of very doubtful propriety, to say the least, and its legitimate bearing upon the issues of the case was very remote and hazy. We would have been better satisfied had it been excluded." *Siegl, supra,* page 627.

The connection between this accident and the failure to have a bell or signal on the bike is equally "remote and hazy." We concur in the statement of the learned trial judge, who said in denying the instruction, "I can't see how [by] any stretch of the imagination that could be fault or causal negligence." It is apparent that an item of negligence that is clearly not causal should not be presented to the jury at all, even if under the statutes it is negligence *per se.* Unless it is relevant to the controversy and is, under a reasonable interpretation of the evidence, arguably causal, it should not be submitted.

*By the Court.*—Orders affirmed.

HALLOWS, J., took no part.